## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

WANDA HARRISON,         )
                             )
      **Plaintiff,**        )
                             )
**v.**                          )
                           )     **CASE NO. 4:14-cv-00242-JEO**
**CAROLYN W. COLVN, Acting**   )
**Commissioner of Social Security,** )
                           )
      **Defendant.**       )

### MEMORANDUM OPINION

Plaintiff Wanda Harrison brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") finding that she is not disabled under the Social Security Act. (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).  (Doc. 18).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

### I.  PROCEDURAL HISTORY

Harrison filed applications for disability insurance benefits on March 2, 2011.  She alleged a disability onset date of August 5, 2009.  (R. 23).[2]  Her applications were initially denied by the State Agency.  On August 8, 20111, the plaintiff requested a hearing before an Administrative Law

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] References herein to "R. __" are to the page number of the administrative record which is encompassed within the Commissioner's Answer at document 5.

Judge ("ALJ"), which was held on October 18, 2012.  The plaintiff, her counsel and a vocational expert were present during the video hearing.  On December 19, 2012, the ALJ issued his decision finding that the plaintiff was not entitled to benefits.

Harrison filed a request for review with the Appeals Council and on January 30, 2014, the Appeals Council denied the plaintiff's request.  On that date, the ALJ's decision became the final decision of the Commissioner.  The plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g).  Counsel for the Commissioner filed her brief, to which the plaintiff responded. (Docs. 8 & 14).  The court then required the Commissioner to reply to the plaintiff's brief, which she did.  (Docs. 15 & 17).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389. 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  It is "more than a scintilla, but less than a preponderance."  *Id*.

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the

2

law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement period of disability, a claimant must be disabled as defined by the Social Security Act and Regulations promulgated thereunder.[3]  The Regulations define being "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

1.      Is the claimant presently unemployed;

2.      Is the claimant's impairment severe;

3.      Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"];

4.      Is the claimant unable to perform his or her former occupation;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

     5.      Is the claimant unable to perform any other work within the economy?

*Mcdaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  An affirmative answer to any of the above questions leads either to the next question or, at steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *Id*. *see* 20 C.F.R. §§ 404.1520 and 416.920.

## IV.  FINDINGS OF THE ALJ

The plaintiff was 58 years old at the time of her hearing before the ALJ.  She has past relevant work experience as a cook helper and sewing machine operator in a knitting factory.  (R. 23-25).  She alleges that she has been unable to work since August 5, 2009, due to debilitating back and hip pain and depression/anxiety.  (R. 23).  Following a hearing, the ALJ determined that the plaintiff had severe impairments of anxiety, depression, and degenerative disc disease.  (R. 30). However, none of these impairments, individually or in combination, met or medically equals the severity of one of the listed impairments.  (*Id*.)  The ALJ further found that the plaintiff has the residual functional capacity to perform light work with some limitations.  (R. 27-31).  Finally, the ALJ determined that the plaintiff is capable of performing her past relevant work as a sewing machine operator.  (*Id*.)

## V.  DISCUSSION

The plaintiff claims that the decision of the ALJ is due to be reversed and benefits awarded to her or that the decision is due to be remanded for further, proper consideration.  The Commissioner argues that the contention is without merit and that the decision of the ALJ is supported by substantial evidence.

### A.    The Standard

It is well-settled that the plaintiff bears the burden of proving that she is disabled.  *See* 42

U.S.C. § 423 (D)(5)(A); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512(a), (c); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide the evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

In evaluating a disability claim involving subjective complaints such as pain, United States District Judge L. Scott Coogler has stated:

> In order to establish a disability on the basis of subjective testimony of pain and other symptoms, the claimant must present evidence to support the Eleventh Circuit's pain standard.  Under this standard, a plaintiff must present (1) evidence of an underlying medical condition; and (2) either a) objective medical evidence confirming the severity of the alleged symptoms or b) that the objectively determined medical condition is of such a severity that it can reasonably [be] expected to give rise to the alleged pain.  *See* 20 C.F.R. § 404. 1529(a) (2011); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1225 (11th Cir. 1991)).  If the claimant establishes an impairment that could reasonably be expected to cause his alleged symptoms, the ALJ is obligated to evaluate the claimant's subjective complaints, including intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work.  *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ may discredit this type of pain testimony only by articulating "explicit and adequate reasoning" based on substantial evidence from the record.  *Foote*, 67 F.3d at 1561; *Wilson*, 284 F.3d at 1225.

*Parker ex rel. Parker v. Colvin*, 2013 WL 2635696, *3 (N.D. Ala. June 10, 2013).  A reversal is warranted if the decision of the ALJ contains no indication of the proper application of the three-part pain standard.  *Holt*, 921 F.2d at 1223.

**B.     The Merits**

      **1.      The Plaintiff's View**

In support of the plaintiff's contention that she is disabled, counsel points to the plaintiff's testimony concerning her "debilitating back and hip pain which radiates in to her lower extremities, and depression and anxiety."  (Doc. 14 at 2).  Counsel also points to Dr. Mary Kessler's testimony about how the plaintiff's illiteracy would significantly affect the number of jobs she would qualify for.  (Doc. 14 at 3).  Counsel also contends that the ALJ failed to properly consider Dr. Jason Junkins' testimony as to the plaintiff's pain and limitations.  Counsel also contends that there was no testimony to support the ALJ's determination that the claimant was capable of performing past relevant work.  Counsel concludes that the plaintiff is entitled to an award of benefits.  (Doc. 14 at 8).  The Commissioner argues that the ALJ properly gave only "some weight" to Dr. Junkins' opinion.  (Doc. 8 at 9; Doc. 17 at 1-2).   Further, the Commissioner argues that the ALJ appropriately used a hypothetical scenario during the hearing to determine whether the plaintiff was capable of performing past relevant work.  (*Id*.)

The plaintiff asserts that she was disabled as of August 5, 2009.  (R. 23).  The plaintiff stated at the disability hearing that she has back pain in the lower center of her back that rotates into her hip area.  (R. 43, 44).  She further stated that she can sit between 10 and 15 minutes before she has to stand or shift due to back pain and she can stand between 8 and 10 minutes at a time.   (R. 44).  She treats the pain by reclining in a chair and using ice packs or heating pads.  (*Id*.)  Her normal activities consist of cooking, lying down, light cleaning, attending church, and fishing.  (R. 45-48).

6

The plaintiff also stated at the disability hearing that she suffers from anxiety.  (R. 48, 50-51).

    **2.**     **Medical Records**

    Medical records from Dekalb Interfaith Medical Clinic show that in July 2007, she visited the Clinic complaining of swelling in her feet and legs because she had been "on them more than ususal."  (R. 215).  She returned in August complaining of lower back pain, cramping legs, painful urination, and high cholesterol.  (R. 203).  The plaintiff was ultimately diagnosed with a urinary tract infection.  (*Id*.)  In 2008, the plaintiff presented to the Clinic with back pain between her shoulders, lower back pain, and arm pain.  (R. 205).  She explained to the doctor that a bulging disc had been discovered months prior and she needed medication for the pain.  (*Id*.)  The doctor prescribed her anaprox and referred her to a physical therapist for her back pain.  (*Id*.)  The plaintiff returned to the Clinic a few months later with another urinary tract infection.  (R. 204).  A couple weeks later, the plaintiff returned complaining of back and joint pain, but there was no physician available.  (R. 209).  The plaintiff returned a few weeks later and complained of a rash on her chin and a sore right hand.  (R. 212).  In February 2009, the plaintiff went to Dekalb Regional Medical Center complaining of chest pain and was diagnosed with episodic atrial fibrillation with chest pain.  (R. 241-258).  She was admitted to the hospital and discharged two days later.  (R. 241, 243).  In April 2009, the plaintiff returned to the hospital complaining of palpitations and chest tightness.  The plaintiff was admitted and discharged from the hospital the same day.  (R. 210, 259-271).

    A year and a half later, the plaintiff presented to Dekalb Interfaith Clinic with a sinus headache.  (R. 274).  In May 2011, the plaintiff presented to Scottsboro Quick Care Clinic for a disability physical examination, with a chief complaint of "on and off" back pain that had been ongoing for quite some time.  (R. 277-79).  The plaintiff stated that her back pain caused her to hurt all the time and bending and twisting of the back caused her pain.  (*Id.*)  The plaintiff also talked

about her history with depression and anxiety, although she stated that she was not seeing a psychiatrist.  She also stated that she had a history of acid reflux and some arthritis of the spine. (*Id*.)  Medical records from Dr. Younus Ismail, at the Scottsboro Clinic, show that a detailed examination was completed on the plaintiff.  (*Id*.)  The examination showed some crepitance on the knee but no subluxation of any of the major joints.  (*Id*.)  There was no evidence of any muscular atrophy, deep tendon reflexes were 2+, and range of movement at shoulders, elbows, hands, hips, knees, and ankles were within a normal limit.  (R. 277-79).  Tenderness of the lumbar spine was noted and a mild spasm of the lumbar paraspinal muscles was noticed.  (*Id*.)  Dr. Ismail noted that the plaintiff has a normal gait and she is able to walk without any assisted device.  (*Id*.)  An x-ray of the LS-spine AP and lateral views was done in the office and it showed a normal alignment. (*Id*.) The plaintiff was diagnosed with chronic back pain, degenerative disc disease of the spine, depression, anxiety, gastroesophageal reflux disease, and insomnia.  (*Id*. at 279).

In June 2011, the plaintiff presented to Dr. Mary Arnold for a psychological evaluation.  (R. 281-83).  Dr. Arnold noted that the plaintiff was alert and oriented in all spheres.  She was mentally able to calculate six quarters and was able to repeat span of five digits forward and three digits backwards.  (*Id*.)  The plaintiff also counted backwards from twenty and recited serial 7s.  (*Id*.)  The plaintiff knew her social security number, recalled three of three objects with some delay, and was able to name the months of the year in a backwards sequence.  (*Id*.)  The plaintiff reported that she does her own grooming and dressing and pays bills at the business.  (*Id*.)  She and her husband go to church every Sunday and she loves to take her grandchildren fishing.  (R. 282-83).  Dr. Arnold diagnosed the plaintiff with adjustment disorder and noted that she was poorly educated.  (R. 283).

In September 2011, the plaintiff visited Dr. Russell Hutcherson complaining of low back pain and lower extremity hypoesthesia.  (R. 301-02).  X-rays were performed and the plaintiff was

diagnosed with mild discogenic degenerative disease without acute osseous abnormality.  (R. 302).
The plaintiff had a similar complaint on October 4, 2011.  (R. 300).

In December 2011, the plaintiff visited Riverview Regional Medical Center with chest pain.
She was discharged a short time later with a cardiac diet and continued on her medications.  (R. 307-
62).  Smoking cassation was recommended.  (R. 352).

On July 11, 2012, the plaintiff presented to Quality of Life Health Services with back pain.
(R. 367-71).  The plaintiff rated her pain as an 8 out of 10.  (*Id*.)  She stated that the problem was
worsening and that it occurs intermittently.  (*Id*.)  The plaintiff described the pain as aching, burning,
and throbbing.  (*Id*.)  She also stated that the pain wakes her up at night.  (*Id*.)  A physical
examination of the plaintiff showed thoracic spine muscle spasms, some moderate pain with motion,
and spasms in the lumbar spine.  (R. 369).  She was diagnosed with a backache, constipation, chest
pain, esophageal reflux, depression, insomnia, and anxiety.  (R. 370).  Two weeks later, the plaintiff
returned to Quality of Life Health Services with chest pain/pressure, fatigue, and cold sweats.  (R.
372).  The plaintiff stated that she did not want to make an appointment with a cardiologist, but
would seek cardiology treatment through the emergency room.  (*Id*.)  During the physical
examination, the plaintiff had no back pain, joint pain, neck pain, or muscle weakness.  (R. 374)
The plaintiff noted an increased level of anxiety due to her husband's illness.  (*Id*.)  The plaintiff was
sent to the emergency room for further evaluation.  (R. 375).

### 3.    Analysis

The ALJ examined all of the evidence and found that the plaintiff's "statements concerning
the intensity, persistence, and limiting effects" of her symptoms "are not credible to the extent they
are inconsistent with the above residual functional capacity assessment."  (R. 31).  The ALJ further
noted that "in comparing the claimant's residual functional capacity with the physical and mental

9

demands of this work" the plaintiff "is able to perform [her past relevant work as a sewing machine operator] as actually and generally performed." (*Id.*)  In reaching these determinations, the ALJ found that the plaintiff's medical examinations and the plaintiff's own daily activities suggest that a limitation to light work is reasonable. (R. 27).  The ALJ went further and noted that the plaintiff's pain is "moderate at most and that this moderate pain has a moderate affect on the claimant's ability to concentrate occasionally." (R. 30).  The record reveals that the claimant "demonstrated good condition, abstract reasoning, and thought processing during a psychological exam." (*Id.*)  The plaintiff has managed her pain with medications, heating pads, and ice packs. (R. 44-45, 192-96).

### a.      Consideration of the Opinions of Dr. Junkins

The plaintiff contends that the ALJ did not properly consider the opinions of Dr. Jason Junkins nor did he provide sufficient clarity for disregarding the same. (Doc. 14 at 3).  The Commissioner retorts that the ALJ's decision to not to accept Dr. Junkins' opinion is supported by substantial evidence. (Docs. 8 at 9 & 17 at 1).  The court agrees with the Commissioner.  An ALJ can consider a number of factors to determine the weight to give each medical opinion.  The ALJ can consider whether the doctor has examined the claimant, the length and extent of a treating doctor's relationship with the claimant, medical evidence and explanation supporting the doctor's opinion, how consistent the doctor's opinion is with the record, and the doctor's specialization.  20 C.F.R. § 404.1527(c)(1-6).  The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, the evidence in the record suggests that Dr. Jason Junkins was a consultative physician and not a treating physician. (R. 58, 383-88).  Accordingly, Dr. Junkins opinion is not entitled to the substantial weight given to the opinion of a treating physician. *Cf Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (stating that "[t]he ALJ

correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight").

The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x. 830, 834 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  In addressing the opinion of Dr. Junkins, the ALJ gave his opinion "some weight."  (R. 31).  The ALJ found that "although it is more limiting than the current residual functional capacity, the only explanation for the limitation is back pain or neuropathy."  (R. 31, 383-88).  As stated, the ALJ's reason for giving only "some weight" to the consultative physician was the lack of medical evidence and explanation supporting the doctor's opinion.  (R. 31).  The ALJ considered Dr. Junkins' lack of medical explanation, the medical assessments of the plaintiff by treating physicians, and the plaintiff's own daily activities in deciding what weight to give Dr. Junkins' opinions.  With regard to the plaintiff's daily activities, the ALJ noted:

> The claimant is the primary caregiver of her husband.  The claimant is able to do laundry and housework.  Additionally, the claimant enjoys fishing as a hobby.  The claimant is able to go to church every Sunday and even start revivals.  She is able to host gatherings at her home to celebrate holiday.  She goes to softball games, shops, gardens, and takes care of the dogs.  These activities are inconsistent with an individual who is limited to sedentary work, which is the exertional level the claimant's representative suggests best describes the claimant.

(R. 29, 30).  On the evaluation form where Dr. Junkins is asked to identify the particular medical or clinical findings supporting his conclusions, he simply stated "back pain" or "neuropathy."  (*Id*.)  Thus, the undersigned finds that the substantial evidence in the record supports the ALJ's decision to give only "some weight" to the opinion of Dr. Junkins.

To the extent that the plaintiff argues the ALJ's statement that Dr. Junkins' opinions did not show disabling limitations is inconsistent with the testimony of the vocational expert (doc. 14 at 4-5;

R. 31 & 61), the court finds this unpersuasive for a number of reasons.  First, the hypothetical limitation posited by counsel at the hearing to the vocational expert was not premised on the opinions of by Dr. Junkins.  Counsel asked the expert if the plaintiff could perform past relevant work if she could not use her "lower extremities in any kind of repetitive fashion or to utilize foot controls."  (R. 61).  The expert replied, "Yes, that would preclude the sewing machine operation." (*Id*.)  What Dr. Junkins said, however, is that the plaintiff could occasionally use foot controls with both feet.  (R. 385).  Additionally, the vocational expert stated the plaintiff could work sewing machines equipped with knee controls.  (R. 61).  Accordingly, Dr. Junkins' opinions and the VE testimony does not warrant a conclusion that the plaintiff is not disabled.[4]

### b.    Past Relevant Work

The plaintiff also contends that there was no testimony provided at the hearing to support the ALJ's determination that she was capable of performing her past relevant work.  (Doc. 14 at 6).  The Commissioner retorts that the vocational expert's testimony supports the ALJ's determination that the plaintiff could perform her past work.  (Doc. 17 at 3-4).  The court again agrees with the Commissioner.

The ALJ found at step four of the sequential evaluation process that the plaintiff could perform her past relevant work as a sewing machine operator based on the evidence presented in the record.  (R. 31).  In concluding that the plaintiff was capable of performing past relevant work, the ALJ also noted that the "vocational expert testified that the claimant could perform her past job given the residual functional capacity."  (*Id*.)  At step four of the sequential evaluation process, the

---

[4]It must also be noted that an ALJ does not have to include every limitation in its hypothetical that he finds to be unsupported.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  Evidence in the record suggests that the ALJ properly concluded that some of the limitations were unsupported by medical evidence or the plaintiff's testimony.

ALJ is to determine whether the claimant has the "residual functional capacity" to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). This determination takes into account all relevant evidence, including the medical evidence in the record and the plaintiff's testimony. (*Id.*) A vocational expert may be used to determine whether a claimant can perform past relevant work. 20 C.F.R. § 404.1560(b)(2). A hypothetical question also may be used to determine whether a person with the physical and mental limitations imposed on the claimant can meet the demands of the plaintiff's previous work. (*Id.*) In order for a vocational expert's testimony to constitute substantial evidence, the ALJ's hypothetical question must include all of the plaintiff's limitations. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The plaintiff argues that the ALJ did not ask the vocational expert questions about all of the limitations found in the residual functional capacity, specifically the limitations resulting in concentration difficulties. (Doc. 14 at 6).

The hearing record demonstrates that the ALJ posed the following hypothetical to the vocational expert:

> So if you would, assume an individual of the claimant's age, education, and past work; the individual has exertional limitations that would limit her to medium work; and finding that she experiences moderate pain which is moderately effecting her ability to concentrate and this occurring on an occasional basis during an eight-hour workday; she experiences moderate depression and anxiety and overall moderate psychiatric impairment which is moderately affecting her ability to concentrate, this also occurring on an occasional basis during an eight-hour workday; as long as she has regularly scheduled breaks normally allowed in the workplace by an employer, the claimant will never be off task during that eight-hour workday; the claimant could never climb a ladder, ropes, or scaffolds, but can occasionally kneel, crouch and crawl; can frequently climb stairs and ramps and can frequently balance, stoop, reach, handle, finger, and feel. Now given that hypothetical question, can she perform any of her past work?

(R. 57). The ALJ confirmed with the vocational expert that if the plaintiff was limited to light work, she would be able to do the seamer job. (R. 58). The ALJ included all of the

13

limitations that were consistent with the medical and other evidence presented in the record

in his inquiries of the vocational expert.  (R. 27).  The vocational expert answered in the

affirmative concerning the plaintiff's ability to work.  (R. 57).

> Concerning the plaintiff's concentration difficulties, the ALJ noted the following:

> The claimant stated in her function report that she has difficulty remembering what she is doing; however, she also noted that she can follow instructions fairly well (Exhibit 7E).  The claimant demonstrated good cognition, abstract reasoning, and thought processing during a psychological evaluation (Exhibit 6F).  However, the claimant likely has some concentration difficulties from her anxiety and depression, and the undersigned has included these concentration difficulties in the above residual functional capacity.

(R. 30).  Further, the ALJ stated:

> Although the claimant rated her pain an 8 out of 10 in 2012, her pain can hardly be rated as more than moderate (Exhibit 10F).  In fact, her testimony is more consistent with the record, and she testified that she has back pain that rates a 5 or 6 out of 10.  The plaintiff has infrequent complaints of back pain at best.  She complained of back pain in 2008 and did not complain of back pain again until 2011 (Exhibit 1F and 5F).  Her degeneration was described as mild in 2011, when she had an x-ray (Exhibit 8F).  In July 2012, which is her last complaint of back pain in the record even though it is not the last medical visit in the record, the claimant had muscle spasms in her thoracic and lumbar spines and reported moderate pain with motion in her thoracic spine (Exhibit 10F).  Claimant testified that she uses ibuprofen for pain and that she treats her pain with heating pads, ice packs, and reclining for a few hours.

(R.30).  The ALJ included all limitations that he found to be supported by evidence as a hypothetical

question to the vocational expert.  The vocational expert testified that an individual could work with

mild to moderate pain.  (R. 60).  He also stated she could perform her past relevant work.  (R. 58).

Taking into account all relevant evidence in the record, including the testimony of the vocational

expert, the ALJ had substantial evidence to conclude that the plaintiff was capable of returning to

her past work.

The plaintiff has failed to show how the ALJ legally or factually misapplied applicable

Eleventh Circuit precedent.  In sum, substantial evidence supports the determination of the ALJ that

the plaintiff was not under a disability as defined by the Social Security Act.

## VI. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**.

**DONE**, this the 20th day of April, 2015.

_John E. Ott_

**JOHN E. OTT**
Chief United States Magistrate Judge